*Sunbury,*
*Tuesday,*
June 12.

## CONNER *against* the COMMONWEALTH.

### IN ERROR.

A warrant of arrest, issued upon common rumor and report of the party's guilt, though it recite that there was danger of his escaping before witnesses could be summoned to enable the judge to issue it upon oath, is illegal, and the constable to whom it is directed is not bound to execute it.

THE plaintiff in error was indicted at an Oyer and Terminer for *Northumberland* in *April* last, of the offence charged in the following bill:

" The grand inquest of the commonwealth of *Pennsylva-* " *nia,* and for the body of the county of *Northumberland,* on " their oaths and affirmations respectively do present, that on " the thirteenth day of *December* in the year of our Lord one " thousand eight hundred and nine, the honourable *Thomas* " *Cooper* esquire then and yet being President Judge of the " courts of Common Pleas and General Quarter Sessions of " the peace in and for the eighth judiciary district of the " commonwealth of *Pennsylvania,* and President Judge of " the courts of Common Pleas, and General Quarter Ses- " sions of the peace in and for the said county of *Northum-* " *berland,* having authority to hear and determine divers fe- " lonies, trespasses and other misdeeds committed in the

Binney.
3b   38
185  570

" said county, and having by virtue of his office authority to is-
" sue warrants, commitments and other process, on the day and
" year last aforesaid at the county aforesaid did make and is-
" sue his certain warrant under his hand and seal in due form
" of law, bearing date the said thirteenth day of *December* in
" the year eighteen hundred and nine, in the name of the
" commonwealth of *Pennsylvania*, directed to the constable
" of *Derry* township, or to any other constable of the county
" of *Northumberland*, setting forth, *that it appeared to him the*
" *said* Thomas Cooper FROM COMMON RUMOR AND REPORT,
" *that there was strong reason to suspect* Jacob Langs *of* Der-
" *ry township in* Northumberland *county, of having know-*
" *ingly uttered as true and genuine, certain false and forged*
" *notes purporting to be notes of the Farmers and Mechanics'*
" *Bank of* Philadelphia, *and that the said* Jacob Langs *was*
" *likely to depart from and quit the said county of* Northum-
" berland, *and retreat to parts unknown, before the witnesses*
" *to the said uttering could be duly summoned and appear be-*
" *fore him the said* Thomas Cooper, *in order to enable him to*
" *issue a warrant for the said* Jacob Langs *founded upon their*
" *testimony on oath*, therefore authorizing and requiring them
" without delay to bring before him the said *Thomas Cooper*
" the body of the said *Jacob Langs*, in order that he might
" be examined touching the premises, and therein be dealt
" with according to law; which said warrant, afterwards to
" wit on the sixteenth day of *December* in the year eighteen
" hundred and nine at the county aforesaid, to a certain *Jo-*
" *seph Conner*, then being constable of the township of *Green-*
" *wood*, in the said county, and also one of the constables of
" the said county of *Northumberland*, to be executed was de-
" livered, in obedience to which said warrant the said *Joseph*
" *Conner* on the day and year last aforesaid at the county
" aforesaid, proceeded to the dwelling house of the said *Ja-*
" *cob Langs* in the said county of *Northumberland.* And the
" inquest aforesaid on their oaths and affirmations aforesaid
" do further present, that the said *Joseph Conner* late of the
" said county yeoman, so being constable as aforesaid, and
" having in his hands the said warrant on the said sixteenth
" day of *December* in the year eighteen hundred and nine at
" the county aforesaid, to do his duty in that behalf totally

" did neglect, *and wilfully, obstinately, and contemptuously*
" *did make default, and did omit and refuse to take the said* Ja-
" cob Langs, *and bring him before the said* Thomas Cooper
" *esquire, President Judge as aforesaid, as by the said war-*
" *rant he was commanded, and by virtue of his said office of*
" *constable, he should and ought to have done*, to the great hin-
" drance of justice, in contempt of the laws, to the evil exam-
" ple of all others in like case offending, and against the peace
" and dignity of the commonwealth of *Pennsylvania.*"

The plaintiff in error was convicted upon this bill, and the
record of the indictment and sentence removed to this court
by writ of error.

*Hall* for the plaintiff in error argued that the indictment
did not set forth any offence, inasmuch as the warrant it re-
cited was absolutely void upon its face, and the constable
therefore not bound to execute it.

It was a warrant issued merely upon a common rumor of
the party's guilt, without any oath whatever, and without any
thing to supply the place of an oath, but a suggestion that the
party might escape, before witnesses could be summoned to
testify under oath.

This, he said, was in manifest violation of the constitution
of the *United States*, and of the state of *Pennsylvania*, and
repugnant to the first principles of civil liberty.

The *sixth* article of the amendments to the constitution of
the *United States*, directs, that " the right of the people to be
" secure in their persons, houses, papers and effects, against
" unreasonable searches and seizures, shall not be violated;
" *and no warrants shall issue, but upon probable cause sup-*
" *ported by oath or affirmation*, and particularly describing
" the place to be searched, and the persons or things to be
" seized." And the *eighth* section of the ninth article of the
constitution of *Pennsylvania*, provides, in nearly the same
terms, " that the people shall be secure in their persons,
" houses, papers and possessions, from unreasonable searches
" and seizures; and that *no warrant* to search any place or
" *to seize any person* or things, *shall issue*, without describing

"them as nearly as may be, nor *without probable cause sup-*
"*ported by oath or affirmation.*"

The intention of these provisions seems to have been to guard against the very mischief that has occurred. It was obvious that cases might arise, where there would be apparent probable cause for issuing a warrant, and yet no one be found to confirm this probability by his oath. There might also arise cases where a prosecutor would be hardy enough to swear to a cause of prosecution, wholly without probability. The constitution intended to guard the liberty of the citizen, by requiring both the probable cause and the oath to justify the warrant, and the judge in this case acted upon at most but one of them. Common rumor might in some instances be considered as giving probability to a charge preferred upon oath by an individual, but it never can do more than this, and by itself it is nothing under the constitution. The Chief Justice proceeded upon this principle in the *Commonwealth* v. *Duane.* (a)

The suggestion that the party might escape, is not of the least importance; it might be made in any case, and thus turned into an instrument of the grossest oppression. The constitution prefers the escape of ten culprits, to the adoption of a practice which might lead to the imprisonment of one innocent man; it has said what shall be conditions precedent to the issuing of a warrant, and it is not competent to any magistrate to dispense with them. Even extreme cases would not confer the authority, since the constitution has not chosen to provide for them.

If then the warrant was void, it cannot be questioned that the plaintiff in error might refuse to execute it, and therefore the indictment contains no offence.

*Duncan* for the commonwealth, contended, that the warrant was legal, and even supposing it illegal, the constable having received it, was bound to execute it.

The constitution undoubtedly intended to secure the citizen from rash and unfounded arrests, and it therefore asserted as a general principle, that the solemnity of an oath

(a) 1 *Binn.* 102.

should be added to the probability of the charge, in order to justify a seizure of the party accused. But it never intended that these precautions should become impediments in the way of justice, and confer impunity upon the guilty. Like every general principle then, there must be exceptions admitted to it, in order to prevent it from defeating itself. If a magistrate should himself witness the perpetration of a crime, and see that the criminal was about to escape; could the constitution have intended to forbid a warrant in such a case? If he should see a dead body, and be informed that the murderer was about to run off, must he have a formal oath and examination to ground the warrant? Surely there must be an implied exception of such cases out of the general rule, in order to make that rule a safe one for the community. Is there any doubt that in some cases necessity will justify a warrant without oath? Certainly there is not. The magistrate is the only judge of the necessity. He acts it is true under great responsibility, but still he, and he only, is the judge; it is not for the ministerial officer below him, to question the necessity, if it has been already settled by the magistrate. In addition to this, there cannot be stronger probable cause of prosecution, than a general belief of a party's guilt, nor greater necessity for dispensing with the oath, than what arises from the probability of the party's escape.

If a justice appears upon the face of the warrant to have *exceeded his jurisdiction*, that is, if the warrant is to arrest for an offence of which a justice has no jurisdiction, there is no doubt it is held that the constable is not bound to execute it. 3 *Hawk. bk. 2, ch. 13, sec. 10.* But that is a very different case from one, where the justice has undoubted jurisdiction, but has not granted the warrant upon a proper case. There the constable has no right to demur. He is bound to execute it, and may execute it with safety. If he may refuse because an oath has not been taken, with equal propriety may he refuse, where there has been an oath, but there has not been sufficient probable cause. The one is as essential as the other under the constitution, and they equally affect the validity of the warrant. The law does not intrust the officer with the decision of such questions. 3 *Hawk. bk. 2, ch. 19, sec. 24. ch. 20, sec. 1, 2.*

1810.

CONNER
v.
COMMON-
WEALTH.

TILGHMAN C. J. The plaintiff in error was indicted in the court of Oyer and Terminer of *Northumberland* county, for refusing to execute a warrant issued by *Thomas Cooper*, esq. president of the court of Common Pleas of the said county, for the arrest of a certain *Jacob Langs*, of the said county. The warrant was set forth at large in the indictment, and it appeared on the face of it, that it was issued without any previous oath or affirmation, on the following ground—" that " it appeared to the judge from *common report*, that there " was strong reason to suspect the said *Langs* of having " knowingly uttered as true and genuine, certain false and " forged notes, purporting to be notes of the Farmers and " Mechanics' bank of *Philadelphia*, and that the said *Langs* " was likely to depart from, and quit the county of *North-* " *umberland*, and retreat to parts unknown, before the wit- " nesses to said uttering could be duly summoned and ap- " pear before the said judge, to enable him to issue a war- " rant on their testimony on oath."

Judge *Cooper* acted with great candor and propriety in stating on the face of the warrant, that it was issued without oath, and there is no doubt but he was actuated solely by the desire of preventing the escape of a criminal. The question is whether this warrant does not appear to be illegal, from matter contained in the body of it? Of such matter the constable had a right to judge; and if it was illegal, he was not bound to execute it.

It is declared by the 8th section of the 9th article of the constitution of *Pennsylvania*, that no warrant shall be issued to seize any person, without probable cause supported by oath or affirmation. These expressions are very plain and very comprehensive. But it has been contended that the public safety requires that they should be subject to some exceptions; that in cases of necessity the oath may be dispensed with; and that the magistrate who issues the warrant, must be the judge of that necessity. It appears to me, that if this be the true construction, the provision in the constitution is a dead letter; because in every instance, the magistrate who issued the warrant, would say that he thought it a case of necessity. It is true, that by insisting on an oath, felons may sometimes escape. This must have been very

well known to the framers of our constitution; but they thought it better that the guilty should sometimes escape, than that every individual should be subject to vexation and oppression. It is unnecessary to consider whether there is no possible case, in which a warrant may be issued without oath, a case for instance, in which a crime is committed under the eye of a magistrate; or whether in cases of great and imminent public danger, the *salus populi* will not form an exception to the general rule. When such cases arise it will be time enough to decide them. It is dangerous for a court to lay down general propositions, from which unforeseen consequences may be drawn. I shall therefore confine my opinion to the warrant set forth in the indictment. It was commonly reported that *Langs* was guilty of uttering counterfeit notes; this common report came to the ears of the judge, and on that he issued his warrant. The constitution says a warrant shall not be issued without oath, which is more than common report. If the constitution did not mean, that a man charged with or suspected of a particular offence, should not be arrested, unless some person swore either that he believed him to be guilty, or to some facts from which it might be reasonably inferred that he was guilty, then I confess I can see no meaning in it. As for the necessity set forth in the warrant, that is to say the probability that the criminal might escape, I cannot think that it is of that nature, which can form an exception to the constitution; even supposing, (which I do not affirm) that any necessity can form an exception. I am therefore of opinion, that the warrant was illegal, on the face of it, and the defendant not bound to execute it; consequently when he refused to execute it, he was guilty of no offence. But the refusal to execute the warrant is the only matter charged against the defendant in the indictment. Therefore, although the jury have convicted him of the matter charged, it does not appear on the record that he has been convicted of any crime. It follows, that the judgment of the court of Oyer and Terminer was erroneous and must be reversed.

YEATES J. of the same opinion.

BRACKENRIDGE J. of the same opinion.

Judgment reversed.